RECEIVED
MAR 14 2012
TONY R. MOORE, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| ST. PAUL FIRE & MARINE INS. CO. et al | CIVIL ACTION NO: 3:11-CV-00816 |
| VERSUS | JUDGE DONALD E. WALTER |
| CATERPILLAR, INC. | MAG. JUDGE KAREN L. HAYES |

## MEMORANDUM RULING

Before the Court is a Motion for Partial Summary Judgment dismissing plaintiffs' redhibition claim [Doc. #15] filed on behalf of defendant, Caterpillar, Inc. ("Caterpillar"), pursuant to Federal Rule of Civil Procedure 56. Plaintiffs, St. Paul Fire & Marine Insurance Company ("St. Paul") as subrogee of/and the Louisiana Rural Parish Insurance Cooperative("LRPIC")(collectively "the plaintiffs"), oppose the motion [Doc. #18]. For the reasons assigned herein, the Motion for Partial Summary Judgment is **GRANTED**.

## SUMMARY OF UNCONTESTED FACTS

This case arises out of a June 1, 2010 fire, in a 2004 Caterpillar Model 836G Landfill Compactor, serial number BRL00424 (hereinafter "the Compactor").[1] At the time of the fire, the Compactor was in use at the Union Parish Landfill in Farmerville, Louisiana.[2] The Compactor was originally purchased from Louisiana Machinery in 2003, by the Union Parish Police Jury, which is a member of the LRPIC.[3] St. Paul insured the Compactor through a policy issued to and through the

---

[1] Doc. #1, ¶¶ 6, 7; Doc. #15-1, ¶ 1.

[2] Doc. #1, ¶ 7.

[3] Doc. #15-1, ¶ 6; Doc. #15-4, St. Paul's Answers to Defendant's Interrogatories, p. 3 (answer to Interrogatory No. 4.).

1

LRPIC, which is identified as "an interlocal risk management agency comprised of member governmental police juries."[4] The plaintiffs, St. Paul and LRPIC, filed the instant lawsuit against Caterpillar on June 1, 2011, setting forth claims arising both in redhibition and under the Louisiana Products Liability Act.[5]

The plaintiffs allege that the "fire originated in the engine compartment of the Compactor and was determined to have been caused by a defect in the design and manufacture of components in the engine compartment."[6] At the time of the fire, the Compactor was approximately seven years old and had been in service for over 10,000 hours.[7] Certain records show that, as of April 2010, the Compactor may have even been in service for over 12,000 hours.[8] The Compactor was involved in a previous fire in 2005 and had undergone extensive service and repair work, including a rebuild of the transmission, torque convertor and engine in the fall of 2008.[9] The superintendent of the Union Parish Landfill, Richard Phelps, testified in his deposition that he was unaware whether any of the engine components in the Compactor at the time of the fire were original to the Compactor.[10]

The plaintiffs allege that the 2010 fire, which is the fire at issue in the instant lawsuit, was

---

[4] Doc. #1, ¶¶ 2, 15; Doc. #15-1, ¶ 5.

[5] Doc. #1; Doc. #15-1, ¶ 2.

[6] Doc. #1, ¶ 8; Doc. #15-1, ¶ 3.

[7] Doc. #15-1, ¶¶ 7, 8.

[8] Doc. #15-1, ¶ 9; Doc. #15-7 ("Meter Reading: 12,450.0" [hours]).

[9] Doc. #15-1, ¶ 10; Doc. #15-6, p. 20, lines 20-25.

[10] Doc. #15-1; Doc. #15-6, p. 22, lines 8-14.

caused by a defect in the starter motor solenoid assembly.[11] Plaintiffs further contend that this defective starter motor solenoid was included in the starter motor installed by Louisiana Machinery in 2005, in response to a notice issued by Caterpillar under its Product Improvement Program.[12] Therefore, it is uncontested that the allegedly defective starter solenoid was not an original part of the Compactor.[13] Instead, the plaintiffs argue that the starter motor assembly was provided by Caterpillar in conjunction with a recall of its own part, and therefore, it constitutes "a continuation of the warranty of redhibition on the original sale of the compactor."[14]

The plaintiffs identify two areas in which there exist genuine issues as to material facts which should preclude the Court from granting Caterpillar's motion for partial summary judgment. First, the plaintiffs claim there are contested facts surrounding the question of whether the moisture intrusion problem with the starter motor solenoid assembly constitutes a redhibitory defect.[15] Second, the plaintiffs claim there are contested facts regarding whether such alleged defects rendered the Compactor defective in redhibition, considering the starter motor was not installed in the Compactor until 2005.[16] However, Caterpillar argues that it is entitled to summary judgment on the plaintiffs' redhibition claims, because there is insufficient evidence to show: (a) that either of the

---

[11] Doc. #18, p. 5; Doc. #18-5, p. 34 of 35 (Report of Expert, Craig Rice, page 31 of 39, "7.6 Opinion.").

[12] Doc. #18, pp. 4-5.

[13] Doc. #18, pp. 4-5; Doc. #24, p. 3.

[14] Doc. #18, p. 5.

[15] Doc. #18-12, ¶ 1.

[16] Doc. #18-12, ¶ 2.

named plaintiffs in this case have standing to assert a redhibition claim, as neither party was the buyer of the Compactor;[17] and (b) that the Compactor at issue was defective at the time of its manufacture almost seven years prior to the fire.[18] Accordingly, Caterpillar moves this Court to dismiss the plaintiffs' redhibition claim, including plaintiffs' claim for attorney's fees.[19]

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) directs that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[20] A fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. *Id.* The court must "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mutual Auto Insurance Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

The moving party bears the initial responsibility of informing the court of the basis for its

---

[17] Plaintiffs argue that Caterpillar's motion comes too late, on the issue of standing. However, "[s]tanding is a jurisdictional requirement which remains open to review at all stages of litigation." *National Organization for Women, Inc. v Scheidler*, 510 U.S. 240, 255 (1994). Although typically raised in a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the issue of a party's standing may also be raised by a motion for summary judgment. *See* 15 James Wm. Moore et al., Moore's Federal Practice § 101.30[1] (3d ed. 2010).

[18] Doc. #15-2.

[19] Doc. #15.

[20] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this court will rely on it accordingly.

motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309 (5th Cir. 1999). The moving party need not produce evidence to negate the elements of the non-moving party's case, but need only point out the absence of evidence supporting the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325; *Lawrence*, 163 F.3d at 311.

Once the moving party carries its initial burden, the burden then falls upon the non-moving party to demonstrate the existence of a genuine dispute as to a material fact. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). The non-moving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted).

Pursuant to Local Rule 56.1, the moving party shall file a short and concise statement of the material facts as to which it contends there is no genuine issue to be tried. Local Rule 56.2 requires that a party opposing the motion for summary judgment set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Local Rule 56.2.

## DISCUSSION

An action in redhibition may be brought only by a buyer against a seller of property, and

the existence of a sale to the buyer must be proven. *Franks v. Royal Oldsmobile Co., Inc.*, 605 So.2d 633, 635 (La. App. 5 Cir. 1992). The parties in the instant case concede that the Union Parish Police Jury bought the Compactor from Louisiana Machinery in 2003.[21] Thus, it is undisputed that the buyer of the Compactor is not a named plaintiff in this lawsuit. In order to establish proper standing in this claim for redhibition then, there must be some legal mechanism whereby St. Paul and/or LRPIC are allowed to stand in the shoes of the buyer, the Union Parish Police Jury.

The Union Parish Police Jury is a member of plaintiff LRPIC, which is identified as "an interlocal risk management agency comprised of member governmental police juries."[22] As a result of the fire in the Compactor, LRPIC claims to have suffered a total loss of $279,593.43.[23] St. Paul insured the Compactor through a policy issued to and through the LRPIC.[24] Importantly, the Union Parish Police Jury is also a named insured via the "Name Insured Continued Endorsement" section of the St. Paul policy.[25] Pursuant to the terms of its insurance policy, St.

---

[21] Doc. #15-1; Doc. #15-4, St. Paul's Answers to Defendant's Interrogatories, p. 3 (answer to Interrogatory No. 4.).

[22] Doc. #1, ¶¶ 2, 15; Doc. #15-1, ¶ 5.

[23] Doc. #1, ¶ 14.

[24] Plaintiffs allege that the "LRPIC is the vehicle by which the Union Parish Police Jury secured insurance at a low cost as contemplated through LSA-RS 33:3061 [sic]." [Doc. #18]. Louisiana Revised Statute 33:3061 provides: "It is recognized that municipalities, parishes, and school boards of the state must insure themselves and their employees and officers from various monetary risks and exposures, and that it is necessary to accord municipalities, parishes, and school boards great latitude in contracting for such insurance and providing for the payment of the costs thereof in order to allow such entities to secure such insurance at the lowest possible cost including joinder of and participation in interlocal risk management agencies."

[25] Doc. #18-2, pp. 22, 59.

Paul paid LRPIC $179,593.43, after application of the $100,000 deductible of the LRPIC.[26]

Pursuant to Louisiana Civil Code article 1825, "[s]ubrogation is the substitution of one person to the rights of another. It may be conventional or legal." *See also Institute of London Underwriters v. First Horizon Ins. Co.*, 972 F.2d 125, 127 (5th Cir. 1992). In accordance with Louisiana Code of Civil Procedure article 697, the judicial enforcement of an incorporeal right shall be made by the subrogee when the entire right is subrogated. Here, the Union Parish Police Jury has subrogated its entire right to bring this redhibition claim to the LRPIC. However, the LRPIC has further subrogated its right of recovery to St. Paul, to the extent of payment made by St. Paul to the LRPIC in the amount of $179,593.43.

In accordance with Civil Code article 1825, subrogation may result from either the agreement of the obligor or the obligee or both with a third person (i.e., conventional), or directly from the operation of law (legal). *See Safeway Ins. Co. of Louisiana v. State Farm Mut. Auto. Ins. Co.*, 36-853 (La. App. 2 Cir. 3/05/03); 839 So.2d 1022, 1026. Thus, the intention of subrogation is to protect a person who performs a certain act, namely one who performs an obligation of another. *See A. Copeland Enterprises, Inc. v. Slidell Memorial Hosp.*, 94-2011 (La. 6/30/95); 657 So.2d 1292, 1297. As the agency which oversees all issues of risk management for the Union Parish Police Jury, the LRPIC was the primary named insured on the St. Paul policy and therefore paid the deductible on behalf of the Union Parish Police Jury. Accordingly, the LRPIC was performing that obligation for the benefit of the Union Parish Police Jury and is properly subrogated to the legal claims seeking recovery relating to the payout of that policy.

As for St. Paul, when subrogated to the rights of the insured, the insurer stands in the

---

[26] Doc. #1, ¶ 16.

shoes of the insured and thereby acquires the independent right to assert the actions and rights of the insured. *Barreca v. Cobb*, 95-1651 (La.02/28/96); 668 So.2d 1129. The St. Paul policy provides that St. Paul is entitled to any right of recovery that its insured parties, including LRPIC and Union Parish Police Jury, may have against a third party to the extent that St. Paul made payment under the terms of the policy.[27] Based on this language, St. Paul is conventionally subrogated to the rights of the LRPIC to recover on behalf of the Union Parish Police Jury. *See A. Copeland Enterprises, Inc.*, 657 So.2d at 1298-99. Although Caterpillar cites *Franks v. Royal Oldsmobile Co., Inc.*, 605 So.2d 633, 635 (La. App. 5 Cir. 1992), as authority to the contrary, that argument ignores the well-established "legal fiction" of subrogation.[28] In *Franks*, the court noted that the plaintiff offered no proof at all to support his having purchased the vehicle in question; therefore, the plaintiff failed to prove the necessary element that he was in fact "the buyer." *Id*. In the instant case, there is no question that the Union Parish Police Jury was the buyer of the Compactor. However, both the LRPIC and St. Paul have been properly subrogated to the rights of the Union Parish Police Jury, so as to assume the legal status of "buyers" for purposes of this redhibition claim.

Having established that the plaintiffs have the requisite standing to bring a redhibitory action, we now turn to the merits of their claim. Louisiana's statutory law relative to redhibition can be found in Title VII of the Louisiana Civil Code, entitled "Sale." The warranty against redhibitory defects is as follows:

---

[27] Doc. #18-2, p. 171.

[28] *See Barreca v. Cobb*, 95-1651 (La.02/28/96); 668 So.2d 1129; SAÚL LITVINOFF, THE LAW OF OBLIGATIONS 268 (1992) (referencing 7 Plainiol et Ripert, Traité Pratique de Droit Civil Français 625 (2d ed.1954)).

> The seller warrants the buyer against redhibitory defects, or vices, in the thing sold.
>
> A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale.
>
> A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits the right of a buyer to a reduction of the price.

La. Civ. Code art. 2520.[29] Pursuant to La.Civ. Code 2530, "[t]he warranty against redhibitory defects covers only defects that exist at the time of delivery." Although the extent of a particular seller's liability depends on whether the seller knew of the defect, the seller is deemed to know that the thing he sells has a redhibitory defect when he is a manufacturer of the thing. La. Civ. Code art. 2545; *Aucoin*, 984 So.2d at 691. A manufacturer is liable for redhibitory defects but only for defects "resulting from the original manufacture" of the product. *Aucoin*, 984 So.2d at 693 (citing *Rey v. Cuccia*, 298 So.2d 840, 845 (La.1974)).

It is clear that the prima facie case requires that the plaintiffs show that a non-apparent defect existed at the time of the sale. *See* La. Civ. Code articles 2520 and 2530. It is uncontested that the allegedly defective starter solenoid was not an original part of the Compactor.[30] Instead,

---

[29] The Louisiana Products Liability Act provides that it "establishes the exclusive theories of liability for manufacturers for damages caused by their products." La. R.S. 9:2800.52. However, the LPLA defines "damage" by explicitly excluding amounts recoverable under redhibition for damage to the product and economic loss arising from a deficiency in or loss of use of the product. La. R.S. 9:2800.53(5). Thus, while the LPLA is the exclusive remedy against manufacturers for damages resulting from a defective product, a manufacturer can still be liable for damages in redhibition. *Aucoin v. Southern Quality Homes*, LLC, 07-1014, p. 7 (La. 2/26/08); 984 So.2d 685, 690-691, n.8.

[30] Doc. #18, pp. 4-5; Doc. #24, p. 3.

the plaintiffs argue that the starter motor assembly was provided by Caterpillar in conjunction with a recall of its own part, and therefore, it constitutes "a continuation of the warranty of redhibition on the original sale of the compactor."[31] However, the plaintiffs' argument necessarily requires that the Court ignore key facts, which emphasize the disconnect between the facts of this case and the extent of the warranty against redhibitory defects. At the time of the fire, the Compactor was approximately seven years old and had been in service for over 10,000 hours.[32] The Compactor had previous fire experience and an extensive history of service and repair work, including a rebuild of the transmission, torque convertor and engine in the fall of 2008.[33] Given these facts, there is no conceivable way that any alleged defects in this Compactor can be said to result from its original manufacture.

Although the plaintiffs freely admit that there is no precedent to support their position, they ask this Court to find that a manufacturer who provides a redhibitorily defective replacement part, long after the original delivery of the product, may still be held liable for the entire product in redhibition. The plaintiffs' argument clearly goes against the plain language of the Louisiana Civil Code and its jurisprudential progeny. We therefore decline to extend the law of redhibition to include such a recovery.

## CONCLUSION

For the reasons assigned herein, Caterpillar's motion for partial summary judgment is

---

[31] Doc. #18, p. 5.

[32] Doc. #15-1, ¶¶ 7, 8. (The Compactor may have even been in service for over 12,000 hours. See Doc. #15-1, ¶ 9; Doc. #15-7 ("Meter Reading: 12,450.0" [hours])).

[33] Doc. #15-1, ¶ 10; Doc. #15-6, p. 20, lines 20-25.

**GRANTED**. The plaintiffs' claims, insofar as they seek recovery under the laws of redhibition and the related claims for attorney's fees, are hereby **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**, in Shreveport, Louisiana, this 14 day of March, 2012.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE