RECEIVED
MAR 14 2012
TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| ST. PAUL FIRE & MARINE INS. CO. et al | CIVIL ACTION NO: 3:11-CV-00816 |
| VERSUS | JUDGE DONALD E. WALTER |
| CATERPILLAR, INC. | MAG. JUDGE KAREN L. HAYES |

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment dismissing Plaintiffs' claims under the Louisiana Products Liability Act [Doc. #56] filed on behalf of Defendant, Caterpillar, Inc. ("Caterpillar"), pursuant to Federal Rule of Civil Procedure 56. Plaintiffs, St. Paul Fire & Marine Insurance Company ("St. Paul") as subrogee of/and the Louisiana Rural Parish Insurance Cooperative("LRPIC")(collectively "the plaintiffs"), oppose the motion [Doc. #59]. For the reasons assigned herein, the Motion for Summary Judgment is **GRANTED**.

## SUMMARY OF UNCONTESTED FACTS

This case arises out of a June 1, 2010 fire, in a 2004 Caterpillar Model 836G Landfill Compactor, serial number BRL00424 (hereinafter "the Compactor").[1] The plaintiffs, St. Paul and LRPIC, filed the instant lawsuit against Caterpillar on June 1, 2011, setting forth claims arising both in redhibition and under the Louisiana Products Liability Act.[2] At the time of the fire, the Compactor

---

[1] Doc. #1, ¶¶ 6, 7; Doc. #56-2, ¶ 1.

[2] Doc. #1. Although the plaintiffs' original complaint included other theories of recovery under the LPLA, the only remaining LPLA claim is for defective design. [Doc. #1, ¶ 10(b); Doc. #59, p. 1]. The redhibition claims were the subject of a separate, previously-filed motion for partial summary judgment [See Doc. #15].

1

was in use at the Union Parish Landfill in Farmerville, Louisiana.[3] Caterpillar was the manufacturer of both the Compactor and the starter motor. The plaintiffs claim that the "fire originated in the engine compartment of the Compactor and was determined to have been caused by a defect in the design and manufacture of components in the engine compartment."[4]

Specifically, the product liability claim alleges that the fire was caused by the defective design of the Compactor's starter motor solenoid.[5] The plaintiffs contend that this defective starter motor solenoid was included in the starter motor installed by Louisiana Machinery in 2005, in response to a notice issued by Caterpillar under its Product Improvement Program ("PIP").[6] Therefore, it is uncontested that the allegedly defective starter motor solenoid was not an original part of the Compactor.[7] However, at issue in this motion for summary judgment is a subsequent PIP service letter issued by Caterpillar on June 21, 2010, which outlined the replacement of the starter motor solenoid assemblies in compactors, including the Compactor involved in this case.[8] Employees at the Union Parish Landfill also testified to receiving a related letter from Caterpillar on July 9, 2010, referencing the 2010 PIP service letter, and advising that the PIP included the Compactor at issue.[9] Plaintiffs' expert, Craig Rice, references both the PIP service letter and the

---

[3] Doc. #1, ¶ 7.

[4] Doc. #1, ¶ 8.

[5] Doc. #56-2, ¶ 2; Doc. #59, p. 1.

[6] Doc. #18, pp. 4-5.

[7] Doc. #18, pp. 4-5; Doc. #24, p. 3.

[8] Doc. #59-4 (filed under seal); Doc. #61(sealed document).

[9] Doc. #59-5.

2

related follow-up letter in concluding that the fire resulted from a "failure of the starter solenoid," based on "evidence of moisture intrusion," which he finds to be "consistent with [a] recall of the starter solenoid by Caterpillar."[10]

Caterpillar argues that the plaintiffs cannot establish a prima facie case for defective design under the LPLA, and therefore moves this Court for summary judgment on all remaining claims. Specifically, Caterpillar first argues that the plaintiffs' claim must fail due to lack of expert testimony to establish whether the starter solenoid was manufactured out of specification and that an alternative design would have prevented the plaintiffs' damage.[11] Second, Caterpillar contends that the plaintiffs' only alleged evidence of an "alternative design," contained in the 2010 PIP notice, is inadmissible as a subsequent remedial measure under Federal Rule of Evidence 407.[12]

In opposition to Caterpillar's motion for summary judgment, the plaintiffs argue that the LPLA does not require expert testimony to prove either a design defect or that an alternative design existed.[13] The plaintiffs further contend that Caterpillar's Continuous Product Improvement Program ("CPI") provides evidence of the defective solenoid, the risk of harm involved, and the alternative design.[14] Regarding the timing of the alternative design which the plaintiffs allege would have prevented the fire at issue, the plaintiffs claim that it was feasible and available to Caterpillar at the

---

[10] Doc. #56-4, p. 32, ¶ 6.0.

[11] Doc. #56-2, ¶¶ 4-6.

[12] Doc. #56-1. Caterpillar also raised this issue in a previously filed motion in limine, Doc. #25.

[13] Doc. #59.

[14] Id.

time the relevant solenoid assembly left Caterpillar's control.[15] However, the plaintiffs argue, in their memorandum in opposition to Caterpillar's motion for summary judgment, that the evidence of both the design defect and the alternative design comes from Caterpillar's CPI Program.[16]

Accordingly, the plaintiffs argue that there exist genuine disputes as to material facts which should preclude the Court's granting of Caterpillar's motion for summary judgment.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) directs that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[17] A fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. *Id.* The court must "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mutual Auto Insurance Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

The moving party bears the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lawrence v.*

---

[15] Doc. #59-1, ¶¶ 5-6.

[16] Doc. #59, p.1 (The CPI process began on July 23, 2007 and was closed on September 30, 2010. [*See* Doc. #60]).

[17] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this court will rely on it accordingly.

*Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309 (5th Cir. 1999). The moving party need not produce evidence to negate the elements of the non-moving party's case, but need only point out the absence of evidence supporting the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325; *Lawrence*, 163 F.3d at 311.

Once the moving party carries its initial burden, the burden then falls upon the non-moving party to demonstrate the existence of a genuine dispute as to a material fact. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). The non-moving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted).

Pursuant to Local Rule 56.1, the moving party shall file a short and concise statement of the material facts as to which it contends there is no genuine issue to be tried. Local Rule 56.2 requires that a party opposing the motion for summary judgment set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Local Rule 56.2.

## DISCUSSION

The "Louisiana Products Liability Act" ("LPLA") can be found in Louisiana Revised Statutes 9:2800.51 et seq. The LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products. A claimant may not recover from a

manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in [the LPLA]." La. R.S. 9:2800.52. "The manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity." La. R.S. 9:2800.54. According to the LPLA, a product is unreasonably dangerous if and only if the claimant can prove at least one of four theories of recovery explicitly outlined in R.S. 9:2800.54.

Here, the plaintiffs allege that the product is unreasonably dangerous in design as provided in La. R.S. 9:2800.56, which reads as follows:

> A product is unreasonably dangerous in design if, at the time the product left its manufacturer's control:
>
> (1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and
>
> (2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product. An adequate warning about a product shall be considered in evaluating the likelihood of damage when the manufacturer has used reasonable care to provide the adequate warning to users and handlers of the product.

The characteristic of the product that renders it unreasonably dangerous in design must exist at the time the product left the control of its manufacturer or result from a reasonably anticipated alteration or modification of the product. La. R.S. 9:2800.54(C). In claiming that the Compactor is unreasonably dangerous in design, the plaintiffs bear the burden of proving all of the above elements. *See* La. R.S. 9:2800.54(D); *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 181 (5th Cir.1990), *criticized on other grounds, Little v. Liquid Air Corp.*, 37 F.3d 1069,

1075 & n. 14 (5th Cir.1994).

We first address Caterpillar's contention that the plaintiffs' only alleged evidence of an "alternative design," contained in the 2010 PIP notice, is inadmissible as a subsequent remedial measure under Federal Rule of Evidence 407.[18] The plaintiffs argue that the PIP Service Letter and related PIP notice letter are evidence of prior remedial measures, as they are the result of a CPI process that began in 2007, long before the fire. Federal Rule of Evidence 407 provides that "[w]hen measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove: negligence; culpable conduct; a defect in a product or its design; or a need for a warning or instruction. But the court may admit this evidence for another purpose, such as impeachment or – if disputed – proving ownership, control, or the feasability of precautionary measures." The Fifth Circuit has decided that Rule 407 applies to products liability cases. *See Grenada Steel Industries, Inc. v. Alabama Oxygen Co., Inc.*, 695 F.2d 883 (5th Cir. 1983). In so deciding, the *Grenada* court explained that Rule 407 is consistent with the policy espoused in Rule 403 by requiring that the evidence focus on whether the product or its design was defective at the time the product was sold. *Id.* at 888.

It is clear that the actual letters, both of which post-date the fire at issue, are "subsequent remedial measures." To hold otherwise, would fly squarely in the face of the policy behind Rule 407, which is to encourage owners and manufacturers from improving injury-causing conditions. *See Russell v. Page Aircraft Maintenance, Inc.*, 455 F.2d 188 (5th Cir. 1972). The Court recognizes the fairness of an argument that Rule 407 should not apply to exclude remedial action

---

[18] Doc. #56-1. Caterpillar also raised this issue in a previously filed motion in limine, *see* Doc. #25.

adopted pursuant to decisions made before the accident; however, any such argument does not apply in this case. Each of the PIP-related letters post-date the fire and served merely as the notification element of an ongoing CPI program, which was opened on July 23, 2007 and was not closed until September 30, 2010.[19] As Caterpillar's corporate deposition makes clear, and corroborating documents verify, from July 2007 until September 2010, Caterpillar was investigating reported problems with failed starters, so that a root problem could be determined and an alternative design effected.[20] Included in that process is the design, validation of the design, preparation of the material for production, material-stocking to service the field.[21] The closing date of the CPI, which was September 30, 2010, represents the date that Caterpillar resolved the CPI, dispersed its publications, and had stocked enough parts to effectively make repairs in the field.[22] Thus, it is clear that the alternative design that resulted from this CPI was not available and in existence until several months after the fire that destroyed the plaintiffs' Compactor.

Although the PIP is properly classified as a "subsequent remedial measure" and therefore is inadmissible to prove a defect in a product or its design, an expert may still consider such evidence in forming the basis of his opinion. *See Pineda v. Ford Motor Co.*, 520 F.3d 237, 246-47 (3rd Cir. 2008). Federal Rule of Evidence 703 governs the bases of an expert's opinion testimony and provides as follows:

---

[19] Doc. #59-2, p. 7, lines 18-22; p. 20, lines 13-18; p. 23, lines 1-9.

[20] Doc. #59-2, p. 18, lines 21-24 and p. 19, lines 1-3; p. 22, lines 9-14.

[21] Doc. #59-2, p. 23, lines 19-24.

[22] Doc. #59-2, p. 23, lines 1-9.

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

As the *Pineda* court held, Rule 703 makes clear that evidence need not be admissible itself in order for an expert to rely upon it in forming an opinion, as long as "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." *Id.*

It is not a stretch for an expert, such as the plaintiffs' expert Craig Rice, to rely on a manufacturer's product improvement service letter and notice when forming an opinion regarding a related product or part. Thus, Rule 703 makes an allowance for Craig Rice's consideration of the inadmissible PIP-related letters, for the sole purpose of forming his expert opinion. Here, however, even considering the subsequent remedial measures, Craig Rice failed to form an opinion on the actual design implemented and/or an available alternative design, as required by the LPLA.[23] Specifically, when asked whether the starter solenoid was put together wrong or manufactured out of specification, Rice responded: "No, I don't have an opinion with regard to that."[24] Rice further stated, "I - [w]ithout knowing the specifications - Without the PIP, I wouldn't be able to say whether [the starter solenoid] was manufactured improperly or if it was designed improperly."[25] And, finally, Rice was asked "[w]hat would be a design for this starter

---

[23] Doc. #56-4.

[24] Doc. #56-5, p. 204, lines 2-8.

[25] Doc. #56-5, p. 204, lines 21-24.

9

solenoid that you believe would have prevented this fire from happening?"[26] In response, Rice plainly stated: "I have not evaluated that. I could look at their - the replacement solenoid, and I could look at that design and see if that's better to prevent it, but I have not evaluated what a better design would be and I was not asked to do that."[27]

This is the substance of Caterpillar's next argument. Caterpillar contends that the plaintiffs' LPLA claim must fail due to lack of expert testimony to establish whether the starter solenoid was manufactured out of specification and/or that an alternative design would have prevented the plaintiffs' damage. The plaintiffs argue that the LPLA does not require expert testimony to prove either of these two elements. Instead, the plaintiffs claim that both the defective design of the starter motor solenoid assembly and an alternative design therefor was discovered through Caterpillar's CPI Program, "in which it identified the defect with the solenoid and the risk of harm presented by the defect, and produced an alternative design."[28] Because it is clear from the above discussion that the plaintiffs have otherwise failed to meet their burden of proof under La. R.S. 9:2800.56, we need not reach the issue of whether expert testimony is necessary in this case. However, we acknowledge the Fifth Circuit precedent which allows room for cases in which the judge or jury, by relying on background knowledge and "common sense," can "fill in the gaps" in the plaintiffs' case, thereby abdicating the need for expert testimony. *See Morgan v. Gaylord Container Corp.*, 30 F.3d 586, 590-91 (5th Cir. 1994) (internal citations omitted). In so acknowledging that exceptional cases may arise, the Court concludes this is not

---

[26] Doc. #56-5, p. 205, lines 4-6.

[27] Doc. #56-5, p. 205, lines 7-11.

[28] Doc. #59.

10

such a case.

Accordingly, in order to withstand Caterpillar's motion for summary judgment, the plaintiffs were required to present evidence sufficient to enable a reasonable trier of fact to conclude that the plaintiffs had established the essential elements of their LPLA claim. The plaintiffs have wholly failed to present evidence that there existed an alternative design for the starter motor assembly, capable of preventing the plaintiffs' damage, at the time the product left the manufacturer's control.

## CONCLUSION

For the reasons assigned herein, Caterpillar's motion for summary judgment is **GRANTED**. The plaintiffs' claims are hereby **DISMISSED WITH PREJUDICE**.

It is **SO ORDERED**, in Shreveport, Louisiana, this 14 day of March, 2012.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE